P. D. J. Cab Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued May 9, 1985, before Judges MacPhail, Barry and Palladino, sitting as a panel of three.

Timothy R. Hough, with him, Allan Jaffe, for petitioner.

Alphonso Arnold, Jr., Assistant Counsel, with him, Alfred N. Lowenstein, Assistant Counsel, Daniel P. Delaney, First Deputy Chief Counsel, and Charles F. Hoffman, Chief Counsel, for respondent.

John J. Gallagher, McAllister & Gallagher, P. C., for intervenor, Independence Cab Company.

OPINION BY JUDGE BARRY, December 6, 1985:

This appeal results from an order of the Pennsylvania Public Utility Commission (PUC) which adopted an initial decision of an Administrative Law Judge (ALJ) and ordered the transfer of a certificate of public convenience to operate a taxicab in the City of Philadelphia from appellant, P.D.J. Cab Company (PDJ) to intervenor Independence Cab Co. (Independence).

Although the facts pertaining strictly to the present matter are relatively straightforward, a more exten-

sive discussion into the factual background is necessary to fully understand the situation. PDJ is owned by Bernard Orenstein and holds a certificate of public convenience to operate one taxicab in Philadelphia. In 1973, PDJ filed an application to operate a second taxi. For reasons not explained in the record, the first hearing on the application was not held until late in 1979. By that time, Orenstein was in default on a loan made by Pannonia Federal Credit Union (Pannonia) for approximately $30,000.00. While the stock of PDJ had been put up as collateral for the loan, Pannonia had never sought nor obtained a judgment against either Orenstein or PDJ. Further, Pannonia had never filed an application with the PUC to seek transfer of the certificate of public convenience from Orenstein to Pannonia. Orenstein and Pannonia entered into an agreement with Bernard Goldberg as co-owner and operator of Independence whereby the latter would purchase whatever certificates of public convenience PDJ held. The purchase price was to be $30,000.00 in the event the application for a second certificate was granted and $15,000.00 if it were not. In either event, Pannonia agreed to forgive Orenstein's entire indebtedness once the sale was consummated. That application was eventually denied because after extensive chicanery by all parties was discovered by the ALJ assigned to the case, the ALJ held that Orenstein was not fit to be issued a second certificate since he had no equipment to operate, no insurance and no valid driver's license. (Initial Decision, *Application of P.D.J. Cab*, No. A. 94358, F. 1, AM-A, January 26, 1983.)

During the pendency of that application, Goldberg took over effective operation of PDJ's sole certificate through a lease arrangement. Goldberg and/or Independence has paid all taxes, carried the necessary insurance and filed all required annual reports with

the PUC. In March of 1982, Orenstein executed a transfer application on behlaf of PDJ, proposing to transfer any certificates it held to Independence.

An initial hearing on the application was held in July of 1982. In October of 1982, Orenstein requested that the PUC place the application on hold, alleging that Independence had breached a number of provisions of both the lease agreement and the agreement of sale. Despite the withdrawal of Orenstein's consent to the transfer, additional hearings were held in both April and June of 1983. On November 2, 1983, the ALJ issued an initial decision approving the transfer, finding that Independence had demonstrated the requisite fitness to be a certificate holder. Further, the ALJ relied on the fact that Independence had been successfully operating pursuant to the certificate since 1980. PDJ filed exceptions to the initial decision which were denied. The PUC adopted the initial decision and this appeal followed.

Appellant makes two arguments in this appeal. It first argues that a judgment creditor of a holder of a certificate of public convenience may not be a transferor of that certificate in proceedings under 66 Pa. C. S. §1102(a)(3). In the present case, when Orenstein attempted to withdraw his consent to the transfer, Pannonia exercised its rights under a confession of judgment clause in the note signed by Orenstein. While Pannonia and Independence made such argument, neither the ALJ nor the Commission treated Pannonia as a transferor in this case. In fact, the PUC admits that a judgment creditor of a certificate holder cannot act as a transferor of that certificate since any such transfers must be approved by the Commission. As Pannonia was never treated as a transferor in this case, we need not say more on this point.

Appellant also argues that the Commission erred in approving the transfer of the certificate after Oren-

stein withdrew his consent to the proceedings. Appellant bases this belief on what we perceive to be two unrelated concepts. 52 Pa. Code §3.551(D) contains the application which must be completed for approval of transfer of a certificate. Paragraph 18 of that form states, "Transferor hereby agrees to continue the service as described in Paragraph 11 of this application until the application for transfer is approved, *whereupon transferor will surrender said certificate or permit for cancellation,*" (emphasis added). Appellant insists that the emphasized portion of the above quoted language evidences a principle that the Commission can no longer act on an application for transfer of a certificate once the transferor has withdrawn its consent to the transfer. Suffice it to say that we find no such principle in this language.

Appellant also chooses to characterize the Commission's actions in approving the transfer as a resolution of a private contract dispute between PDJ and Independence. In *Snyder v. Pennsylvania Public Utility Commission,* 187 Pa. Superior Ct. 147, 144 A.2d 468 (1958), the court held that the Commission was without jurisdiction to adjudicate purely private rights. *See Feingold v. Bell of Pennsylvania,* 477 Pa. 1, 383 A.2d 791 (1977). However, we believe that the Commission resolved no purely private dispute in this case; to the contrary, the Commission determined only that Independence was fit to hold a certificate, a determination which is solely within the Commission's province. A close reading of *Snyder,* in fact, shows that a transferor need not give its continuous consent in order that an application for transfer be approved. There, one Smith was the holder of a certificate granting various transportation privileges. Smith contracted with one Snyder to transfer certain of those privileges to Snyder. The Commission approved the transfer of various privileges, including one which

both parties agreed in writing had been erroneously included in the transfer. Both Smith and Snyder joined in an application which requested that this erroneously transferred privilege be transferred back to Smith. In that application, therefore, Snyder was actually the transferor. Snyder then, without notice to Smith, filed an application with the Commission to transfer all of his privileges, including the one which had been erroneously transferred, to a company of which Snyder was an incorporator. Though the history at this point becomes somewhat complex, the Commission eventually transferred the privilege in question back to Smith, despite the fact that Snyder had withdrawn his consent to the original retransfer. The Superior Court held that this action did not violate the principle of forbidding the Commission to adjudicate purely private rights.

For our present purposes, it is important to note that the Superior Court stated:

The Commission has been granted broad authority to effect the legislative intent, and is empowered, not only to amend, but even to cancel certificates previously granted: Latrobe Bus Service v. Pa. P.U.C., 175 Pa. Superior Ct. 164, 103 A.2d 442. While the Commission may not act arbitrarily, it has the same power to revoke a certificate as it has to issue it, upon due cause being shown: Paradise v. Pa. P.U.C., supra, 184 Pa. Superior Ct. 8, 132 A.2d 754.

*Snyder* at 153, 144 A.2d at 470.

Our scope of review from an order of the Commission is well settled. We may not disturb an order involving the issuance, rescission, revocation or transfer of a certificate unless an error of law has been committed, a necessary finding of fact is not supported by the record or one's constitutional rights have been violated. *Yellow Cab Company of Pittsburgh v. Penn-*

*sylvania Public Utility Commission*, 50 Pa. Commonwealth Ct. 448, 412 A.2d 1385 (1980). In the present case, appellant has alleged only that errors of law have been committed. As our review shows that no such errors were made, we affirm the order of the Commission.

ORDER

Now, December 6, 1985, the July 12, 1984 order of the Pennsylvania Public Utility Commission at No. A-00104003 is affirmed.

---

DISSENTING OPINION BY JUDGE MACPHAIL:

I respectfully dissent.

There can be no doubt that the Public Utility Commission has authority to revoke a certificate of public convenience and that its prior approval of the transfer of a certificate of public convenience is required.

Here, however, the certificate of public convenience at issue was not the subject of revocation proceedings. All that was before the Public Utility Commission was the owner's application for the approval of a transfer which the owner subsequently requested be withdrawn. Once that occurred, I do not believe the Public Utility Commission could proceed further.

It seems apparent from the record that there were sufficient grounds upon which the Public Utility Commission could have initiated revocation proceedings but that process was not used; rather, the Commission simply approved the transfer in the best interest of the service, convenience and accommodation of the public. While I agree that the Commission has broad plenary powers, I do not agree that it can arbitrarily override the withdrawal of an owner's application for transfer and order that the subject certificate be transferred.